On November 5, 1997, defendant, Sue Siders, was indicted by the Franklin County Grand Jury and charged with one count of theft in violation of R.C. 2913.02, and one count of illegal use of food stamps in violation of R.C. 2913.46. On April 29, 1998, defendant was tried before a jury which returned a verdict finding defendant guilty of both counts. Following the completion of a pre-sentence investigation, the trial court suspended one year concurrent sentences as to each offense, and placed defendant on probation for a period of three years. Restitution was ordered in the amount of $5,000. Defendant now appeals, raising the following assignments of error:
 [I.] Appellant's conviction for theft is not supported by the evidence and is against the manifest weight of the evidence.
 [II.] Appellant's conviction for illegal use of or trafficking in food stamps is not supported by the evidence and is against the manifest weight of the evidence.
The issue before the court is whether there was sufficient evidence presented to support defendant's conviction, and whether the jury's verdict was in fact against the manifest weight of the evidence. Defendant's prosecution for theft and illegal use of food stamps was based upon the following allegations: (1) that defendant received aid to dependent children and food stamp benefits on a monthly basis; (2) that defendant appeared at the Franklin County Department of Human Services on February 21, 1995 and on July 13, 1995 in order to complete routine reevaluations of eligibility; (3) that on those dates defendant failed to report that her husband, Jimmie Siders, had been working, even though defendant had knowledge of her obligation to so report; (4) that defendant's husband had in fact been employed; and (5) that if defendant had reported her husband's income on a month-by-month basis, defendant's benefits would either have been reduced or eliminated.
The witnesses called during the course of defendant's trial testified in the following order. The first witness to testify was Janice Bennett, Supervisor of Records for the Franklin County Department of Human Services. Ms. Bennett authenticated the reevaluation forms completed during the course of defendant's February and July 1995 eligibility determinations as true and accurate copies of the records kept by the Department of Human Services.
The next witness called was Terri Goins, a case manager for the Department of Human Services. Ms. Goins testified that case managers are responsible for processing new claims for recipients and for the routine reevaluation of recipient eligibility. When a claimant presents a new claim, the case manager is responsible for helping that individual complete an application for benefits and for entering the information contained on that application into the computer system. Ms. Goins explained that once the information has been compiled and entered, an eligibility determination is made and, if appropriate, benefit payments begin.
Ms. Goins also testified that case managers are responsible for completing routine eligibility reevaluations. Those periodic evaluations are conducted once every six months if the recipient has no income and once every three months if the recipient does have outside income. During the course of a reevaluation, the case manager works through the information initially entered into the computer data base at the time a claimant applies for benefits. The information contained in that database will remain unchanged unless the recipient discloses changes in any of the areas impacting the eligibility determination.[1] In Ms. Goins' words, during the course of a benefit reevaluation Case Managers redo the entire benefit application "from top to bottom" to ensure that the payment of benefits is accurate and is commensurate with the recipient's need.
The next witness called to testify was Dimitri Harper. Ms. Harper testified that she was defendant's case manager in 1995, and that she personally conducted defendant's July 13, 1995 reevaluation. During the course of that reevaluation, Ms. Harper specifically asked defendant whether or not any changes had occurred in defendant's household, and whether the information on file was still accurate. In response, defendant relayed that her daughter was moving out of the home into an apartment of her own, and that defendant had obtained employment at a Wendy's restaurant. Ms. Harper also asked defendant whether her husband was still unemployed as recorded in the case file. In response, defendant stated that her husband had been working "odd jobs." Ms. Harper then reminded defendant that regulations required all employment and income to be reported within ten days. Ms. Harper further explained that defendant was required to provide the Department of Human Services with further information and verification of her husband's employment so that the information contained in defendant's case file could be accurately updated. Although Ms. Harper clearly reminded defendant of her obligation to provide complete and accurate information and to report any changes to that information within ten days, defendant failed to provide any further information as instructed. When defendant failed to provide the information, Ms. Harper contacted Jimmie Siders, who provided the name of the company for whom he was working.
The fourth witness to testify was David Dysinger, owner of the property maintenance and rehabilitation company which employed Jimmie Siders. At trial, Mr. Dysinger testified that he had employed defendant's husband "for a couple of years." Mr. Dysinger stated that Jimmie was an unreliable employee who often worked when he felt like it, and generally between twenty and twenty-five hours a week. Mr. Dysinger also authenticated Jimmie Siders' payroll records. Although he had no specific recollection of having met defendant, he did state that he recognized defendant and that the only occasion in which he would have had an opportunity to see her is if she had been present at one of the job sites where Jimmie Siders worked.
The fifth and sixth witnesses to testify were Bridgette Glover, an Auditor for the Department of Human Services, and Richard Schorr, Supervisor of the Records Center for the state's auditor's office. Each witness explained the process in which food stamps are issued, and authenticated records which established that defendant had in fact received benefits issued by the state.
The seventh witness to testify was Nona Hollingsworth, an investigator for the Department of Human Services. Ms. Hollingsworth testified that a request for the investigation of a possible overpayment of benefits to defendant was referred to her for investigation. Upon receiving the request for investigation, Ms. Hollingsworth subpoenaed records from the Service Group and then calculated on a monthly basis what benefits defendant was entitled to after including the income of defendant's husband. After completing her investigation, Ms. Hollingsworth concluded that there had been an overpayment in the amount of $4,050 in aid to dependent children and $2,551 in food stamps.
The eighth witness to testify was defendant's husband, Jimmie Siders. Mr. Siders stated that he and defendant had been married for twenty-eight years and had four children. While he was not employed at the time of defendant's trial, he admitted that he had worked for the Service Group during the time periods in question. Mr. Siders testified that his work for the Service Group consisted of remodeling and painting of properties primarily located in Upper Arlington.
When questioned, Mr. Siders maintained that he did not live with defendant at the time defendant's reevaluation forms were completed, and that she was unaware of his employment with the Service Group. Mr. Siders explained that he was in and out of defendant's home and primarily stayed at either his brother's or sister's homes. Mr. Siders claimed that he did not inform defendant of his employment and that when asked, he would only disclose that he was going to work at his brother's or sister's homes. Mr. Siders also stated that defendant never visited him at any of his job sites. Finally, Mr. Siders did confirm that he and defendant went to H R Block to have their taxes done and that defendant was aware of his earnings as reported on his W-2 and on the income tax returns filed for the 1995 tax year.
The last witness to testify was Mrs. Siders. Contrary to her husband's testimony, defendant testified that Jimmie Siders resided in her household during the relevant time periods, and that he generally stayed at home four nights a week. Defendant explained that Mr. Siders would frequently come home with paint and dirt on his clothes and that she took notice of this fact when she did his laundry. Additionally, defendant readily admitted that she was aware that he did "odd jobs" and that she was aware of his employment with the Service Group as a result of going with her husband to have their income tax returns prepared in January 1995. In regard to the preparation of their income tax returns defendant stated:
 Q. So around January of 1995 you went with your husband to H R Block; correct?
* * *
 And you saw him hand some papers to the lady, correct?
A. It was a paper.
 Q. And you had to sign the income tax form that the accountant presented to you; correct?
A. Yes, sir.
Q. Did you look at it?
 A. The paper that I signed in here, yes, I always do.
Q. You noticed the income on there, didn't you?
A. Yes, sir, I did. We had a big fight about that.
Q. You noticed it wasn't your income; correct?
A. Yeah, I noticed it.
* * *
 Q. So you knew in January of 1995 that your husband was working; correct? * * *
 A. Yeah. I had to know with him handing that paper * * *.
* * *
 Q. If you reported any income whatsoever, you knew that that income would affect the benefits you were receiving from ADC?
A. Yeah. They tell you that. [Tr. 142-144.]
After being instructed on the law, the jury deliberated and returned a verdict finding defendant guilty of both theft and the illegal use of food stamps. Defendant now asks this court to reverse each count on the basis that both are unsupported by the evidence and are against the manifest weight of the evidence.
The legal concepts of the sufficiency and weight of the evidence are both quantitatively and qualitatively distinct. Sufficiency is a term of art used to describe that evidence which, as a matter of law, is legally sufficient to support a particular verdict. State v. Thompkins (1997), 78 Ohio St.3d 380,386. Sufficiency is synonymous with adequacy. When reviewing a conviction challenged on the basis of the sufficiency of the evidence, the evidence must be construed in a light most favorable to the prosecution and the reviewing court must determine whether any rational trier of fact could have found each of the essential elements of the crime proven beyond a reasonable doubt. State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported (1993 Opinions 5437). If, upon review, it is found that a conviction was based upon legally insufficient evidence, the conviction constitutes a denial of due process and retrial of the offense is barred.
Although a judgment or conviction may be sustained by sufficient evidence, it may nevertheless stand in contrast to the manifest weight of the evidence. Thompkins, supra. As set forth by the Ohio Supreme Court in Thompkins, at 387, the manifest weight of the evidence is:
 [T]he inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence
sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.
When a judgment or conviction is challenged as being against the manifest weight of the evidence, the evidence is not construed most strongly in the favor of the prosecution. Rather, the reviewing court must engage in a limited weighing of the evidence in order to determine whether there is competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Conley, supra, citing State v.DeHass (1967), 10 Ohio St.2d 230. Stated alternatively, a reviewing court will not reverse a conviction where there is substantive evidence upon which the trier of fact could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. Id. at 5438-5439.
In this case, defendant's receipt of benefits and knowledge of the reporting requirements were undisputed. Therefore, the simple issue presented to the jury was whether defendant knew that her husband was working and whether she failed to fully comply with her obligation to provide information regarding her husband's employment to the Department of Human Services in light of that knowledge.
Having carefully reviewed the transcript of defendant's trial, we are unable to find that defendant's convictions were either unsupported by the evidence or were against the manifest weight of the evidence. Notwithstanding evidence to the contrary, the testimony presented was sufficient to support a conclusion that defendant was guilty of the offenses charged. Dimitri Harper testified that she conducted defendant's July 1995 reevaluation and specifically inquired as to Jimmie Siders' employment. In response defendant admitted that her husband did "odd jobs," at which time Ms. Harper reminded defendant that regulations required her to report any changes to household income within ten days. Ms. Harper then instructed defendant to obtain and submit the necessary information in regard to her husband's income. Defendant took no action.
David Dysinger testified that he employed defendant's husband "for a couple of years." He also testified that Jimmie Siders worked on average twenty to twenty-five hours a week and that he recognized defendant. Although he had no specific recollection of having met defendant, he explained that the only circumstance in which he would nave seen her is at one of the job sites where Jimmie Siders worked.
Although defendant's husband claimed that he never told defendant that he was working, he did admit that he went with defendant to have their income tax returns prepared and that defendant became aware of his earnings during the course of preparing their return. Indeed, defendant corroborated this fact during the course of her testimony. Defendant also testified that her husband came home at least four nights a week and often with dirt and paint on his clothes. Although circumstantial, in light of the fact that defendant and Jimmie Siders had been married for twenty-eight years, and in light of defendant's admission that he was home at least four nights a week, the jury acted within its province when it chose not to believe defendant's claim that she had no idea her husband worked. Additionally, defendant admitted that Ms. Harper reminded her of her reporting obligations, and also that she did not take any further action to provide the information requested.
In light of the evidence presented at trial, we are unable to accept defendant's contention that her convictions were not supported by sufficient evidence and that they were against the manifest weight of the evidence. The evidence was sufficient to enable the jury to determine that defendant knowingly failed to comply with her reporting requirements and thereby accepted and retained benefits to which she was not entitled. Moreover, we believe there was substantial competent, credible evidence supporting the conclusion that defendant, by way of withholding information, deceived the Department of Human Services. As such, defendant's assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
KENNEDY and DESHLER, JJ., concur.
[1] The eligibility determination is dependent upon such factors as household income, household size, rent, medical, and other expenses.